**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: UNION TRUST PHILADELPHIA, LLC | : | CIVIL ACTION |
| | : | |
| Debtor. | : | NO. 11-4580 |
| | : | |
| UNION TRUST PHILADELPHIA, LLC, | : | MISCELLANEOUS ACTION |
| | : | |
| Plaintiff/Appellee, | : | NO.  11-141 |
| | : | |
| v. | : | |
| | : | |
| SINGER EQUIPMENT COMPANY, INC., | : | |
| | : | |
| Defendant/Appellant, | : | |
| | : | |
| SUNLIGHT ELECTRICAL CONTRACTING COMPANY, INC. AND THOMAS MACKIN, | : | |
| | : | |
| Other Defendants. | : | |

<u>**MEMORANDUM RE: APPEAL FROM BANKRUPTCY COURT ORDER**</u>

Baylson, J.                                                                     November 3, 2011

Presently before this Court is an appeal from an Order of the United States Bankruptcy Court for the Eastern District of Pennsylvania (Coleman, J.) granting a motion for a preliminary injunction filed by Plaintiff-Appellee Union Trust Philadelphia, LLC ("Union Trust"), enjoining state court proceedings brought by Defendant-Appellant Singer Equipment Company, Inc. ("Singer") against third-party non-debtors Joseph Grasso ("Grasso") and Garrett Miller ("Miller").  For the reasons that follow, the Bankruptcy Court is affirmed.

I.      <u>**Background**</u>

On March 31, 2011, Union Trust, the operator of a restaurant named Union Trust Steakhouse in Center City, Philadelphia, filed for bankruptcy protection under Chapter 11 of the

United States Bankruptcy Code.  However, Grasso and Miller, the sole members of Union Trust, did not.  In April 2009, Singer commenced proceedings in Pennsylvania state court by filing suit against Grasso, Miller, and Chestnut Restaurant Ventures, LLC ("CRV"), among others, in an attempt to collect nearly $500,000 in payments that CRV allegedly owed Singer for purchases of restaurant equipment.  Grasso and Miller, along with two other individuals not relevant to the instant dispute, are also members of CRV.  On August 9, 2010, while the state court proceedings were pending, CRV transferred all of its assets, including its interest in the equipment, to Union Trust for one dollar.  Union Trust continues to benefit from the use of the equipment.  On or about April 4, 2011, the Court of Common Pleas of Philadelphia County entered a judgment enforcing a settlement among the parties to the state court proceedings.  The judgment requires Grasso and Miller each to personally contribute $350,000.  Grasso and Miller have appealed from the judgment.

On May 23, 2011, after Grasso and Miller filed their appeal in state court, Union Trust commenced the instant adversary proceeding against Singer,[1] seeking an injunction pursuant to 11 U.S.C. § 105(a) that would extend the protections of the automatic stay under 11 U.S.C. § 362(a) to enjoin the state court proceedings.  On June 7, 2011, after a hearing on the matter, including testimony by both Grasso and Miller, the Bankruptcy Court granted Union Trust's request for preliminary injunctive relief over Singer's objections.  The Bankruptcy Court determined that the preliminary injunction would expire on August 31, 2011.  The court believed this would provide Union Trust sufficient amount of time to prepare and submit a reorganization

---

[1] In the adversary proceeding, Union Trust also named as defendants Sunlight Electrical Contracting Company, Inc. and Thomas Mackin, but neither has appealed the decision of the Bankruptcy Court.

plan.  Singer then appealed the Bankruptcy Court's order to this Court.  Shortly thereafter, pursuant to Rule 8001-1(b) of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of Pennsylvania, the Bankruptcy Court issued a memorandum opinion in support of the order.  In re Union Trust Philadelphia, LLC, No. 11-00429-MDC, 2011 WL 2604784 (Bankr. E.D. Pa. June 30, 2011).

On July 7, 2011, Singer filed a motion to stay the effect of the order pending appeal with this Court.  After holding an expedited hearing on the motion, this Court denied the relief sought on procedural grounds.  In re Union Trust Philadelphia LLC, No. 11-mc-141, 2011 WL 3330797 (E.D. Pa. Aug. 2, 2011).

Even though the terms of the preliminary injunction expired on August 31, 2011, Singer made a request by letter, dated September 1, 2011, that this Court rule on the appeal.  In the letter, Singer argued that the expiration of the preliminary injunction did not render the appeal moot because Union Trust could seek to renew the injunction for a limited duration at any time. This Court subsequently held a teleconference on the matter. Union Trust did not object to Singer's contention.  Therefore, resolution of the appeal by this Court is appropriate.

## II.    The Bankruptcy Court's Opinion

In granting Union Trust's motion for a preliminary injunction, the Bankruptcy Court relied on the testimony of both Grasso and Miller at the hearing.  In re Union Trust, 2011 WL 2604784, at *2.  The court explained that the testimony by Grasso and Miller concerning their day-to-day involvement in Union Trust's operations, their involvement in the state court proceedings, and their efforts to secure a loan commitment on Union Trust's behalf to assist in its reorganization were of particular relevance to the issues raised by the motion.  Id.  The court also noted that Singer did not present any of its own witnesses in opposition to the motion, but did

cross-examine Grasso and Miller.  Id.

    As an initial matter, the Bankruptcy Court first concluded that it had jurisdiction to consider the requested relief on the ground that an action for an injunction under § 105(a) is a "core" proceeding under the Bankruptcy Code.  Id. at *3 n.3.  Moreover, the court determined that the Anti-Injunction Act, 28 U.S.C. § 2283, did not limit its jurisdiction and authority to enter such an injunction because § 105(a) is an "expressly authorized" exception to the Act.  Id. at *3-*4.

    Next, the Bankruptcy Court concluded that "unusual circumstances" existed to support extending the automatic stay under § 362(a) to Grasso and Miller.  Specifically, the court determined that Union Trust's ability to reorganize would be substantially diminished if the state court proceedings were allowed to continue because Grasso and Miller devote a substantial amount of their time to the daily operations of Union Trust and are actively involved in its reorganization.  Id. at *6.  According to the court, Grasso has funded tax payments to the Internal Revenue Service on behalf of Union Trust and both Grasso and Miller are helping arrange financing to fund Union Trust's plan of reorganization.  Id.  Additionally, the court determined that there was a reasonable likelihood of successful reorganization because it had negotiated cash collateral agreements and was making adequate protection payments to its lenders, all while continuing to operate its steakhouse.  Id.  Further, the court determined that the risk of harm to Union Trust's ability to reorganize outweighed any delay that would result from enjoining the state court proceedings because the preliminary injunction would not deprive Singer of the ability to collect on its state court judgment, but would only temporarily delay its ability to do so.  Id. at *7.  And finally, the court determined that the public interest supported issuance of the injunction because it would foster Union Trust's reorganization process and protect the integrity of the

claims resolution process.  Id.  Therefore, according to the court, issuance of a § 105(a)

preliminary injunction was proper to extend the effect of the automatic stay to Grasso and Miller.

Id.

    Notably, in order to protect Singer's interests, the Bankruptcy Court required Grasso and

Miller to provide Singer with sworn personal financial statements so that it could monitor their

assets and protect against dissipation.  Id.  The court also made clear that it would revisit whether

continuation of the injunction is warranted if it found that Union Trust had not acted

expeditiously in formulating its plan of reorganization at the time of the injunction's expiration

date.  Id.

## III.    Jurisdiction and Standard of Review

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158.  Singer appeals a

final order of the United States Bankruptcy Court for the Eastern District of Pennsylvania.

In an appeal from an order by a bankruptcy court, a district court sits as an appellate

court.  28 U.S.C. § 158(a)(1).  As a general matter, a district court reviews a bankruptcy court's

legal conclusions de novo and its factual findings for clear error.  In re Global Indus. Techs., Inc.,

645 F.3d 201, 209 (3d Cir. 2011).

A factual finding is clearly erroneous when "the reviewing court on the entire evidence is

left with the definite and firm conviction that a mistake has been committed."  Anderson v. City

of Bessemer, 470 U.S. 564, 573 (1985) (quoting United States v. U.S. Gypsum Co., 333 U.S.

364, 395 (1948)).  In particular, "due regard shall be given to the opportunity of the bankruptcy

court to judge the credibility of the witnesses."  Fed. R. Bankr. P. 8013.

## IV.    Parties' Contentions

Singer contends that the Bankruptcy Court should be reversed for several reasons.  First,

Singer argues the Anti–Injunction Act prohibits the Bankruptcy Court from enjoining the state court proceedings against Grasso and Miller.  In addition, Singer argues that the Bankruptcy Court lacked jurisdiction over the state court proceedings.  Further, Singer argues that the Bankruptcy Court improperly extended the automatic stay to Grasso and Miller.  Finally, Singer argues the Bankruptcy Court abused its discretion in issuing the injunction.

In response, Union Trust contends that the Bankruptcy Court should be affirmed for substantially the same reasons outlined by the court in its opinion.  Union Trust argues that the Anti-Injunction Act does not bar the Bankruptcy Court from enjoining the state court proceedings because § 105(a) creates an exception to the Act and the court had jurisdiction to grant such relief.  Moreover, Union Trust contends that the record demonstrates that the Bankruptcy Court's extension of the automatic stay was not clearly erroneous and that the issuance of the injunction to effectuate the stay was not an abuse of discretion.

## V.   Discussion

A three-step analysis is required to determine whether the Bankruptcy Court properly issued a preliminary injunction extending the § 362(a) automatic stay to the non-debtor third parties in this matter.  In re Philadelphia Newspapers, LLC, 407 B.R. 606, 611 (E.D. Pa. 2009).  First, the Court must determine "whether the Bankruptcy Court had jurisdiction to issue the injunction."  Id.  Second, the Court must determine "whether the Bankruptcy Court properly extended the § 362(a) stay" to the non-debtor third parties.  Id.  And third, the Court will determine "whether the Bankruptcy Court properly exercised its discretion in issuing the injunction pursuant to section 105(a)."  Id.  "Although the facts necessary to support the Court's determination at each step of the analysis may overlap, each step of the inquiry is distinct, independently necessary, and implicates different interests."  Id.; see also In re Combustion

Eng'g, Inc., 391 F.3d 190, 224 (3d Cir. 2004) ("While aspects of the § 105(a) analysis may be relevant to the [] jurisdiction inquiry, these inquiries are analytically distinct." (footnote omitted)).  Unless all three steps of the analysis are satisfied, an injunction should not issue.  Philadelphia Newspapers, 407 B.R. at 611.[2]

### A.      Jurisdiction to Enjoin State Court Proceedings

Initially, the Court must consider whether the Bankruptcy Court had jurisdiction to issue an injunction pursuant to § 105(a) extending the § 362(a) automatic stay to the non-debtor third parties.[3]  The Bankruptcy Court concluded that it had jurisdiction to consider the requested relief on the ground that "an action for an injunction under Section 105 is a core proceeding under [the Bankruptcy Code]."[4]   In re Union Trust, 2011 WL 2604784, at *3 n.3 (quoting In re Monroe Well Serv., Inc., 67 B.R. 746, 754 (Bankr. E.D. Pa. 1986)).  However, in order to enjoin the state court proceedings against Grasso and Miller, the Bankruptcy Court "was required to conclude that it had jurisdiction over [those proceedings]," and not just the instant adversary proceeding in which the motion for an injunction was filed.  Philadelphia Newspapers, 407 B.R. at 611.

---

[2]The Court finds the three-step framework articulated in In re Philadelphia Newspapers, LLC, 407 B.R. 606 (E.D. Pa. 2009), persuasive.  Although the Bankruptcy Court purported to undertake a similar sequential analysis, it conflated the second and third steps of the inquiry.

[3]"Whether subject matter jurisdiction exists is a question of law, and thus [the] standard of review is de novo."  In re W.R. Grace & Co., 591 F.3d 164, 170 n.7 (3d Cir. 2009).

[4]In its jurisdiction analysis, the Bankruptcy Court focused primarily on the effect of the Anti-Injunction Act, 28 U.S.C. § 2283, on its power to issue an injunction to enjoin the state court proceedings.  The Anti-Injunction Act, however, implicates a court's authority to issue an injunction, as opposed to its jurisdiction.  Carlough v. Amchem Prods., Inc., 10 F.3d 189, 198 (3d Cir. 1993) (explaining that the application of the Anti-Injunction Act must be "preceded by the satisfaction of jurisdictional prerequisites" (emphasis in original)).  Therefore, the Court addresses the Anti-Injunction Act below in the discussion of whether the Bankruptcy Court properly exercised its discretion in issuing the injunction.

7

Section 105(a) permits bankruptcy courts to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  But, as the Third Circuit has made clear, § 105(a) "does not provide an independent source of federal subject matter jurisdiction."  Combustion Eng'g, 391 F.3d at 224-25.  "Thus, before considering the merits of any § 105(a) injunction, a bankruptcy court must establish that it has subject matter jurisdiction to enter the injunction."  In re W.R. Grace & Co., 591 F.3d 164, 170 (3d Cir. 2009).

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).[5]  In turn, district courts may refer "any and all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy courts within the district.  28 U.S.C. § 157(a)  "There are thus three types of bankruptcy jurisdiction, commonly called 'arising under,' 'arising in,' and 'related to' jurisdiction."  Grace, 591 F.3d at 171.[6]  Accordingly, "a bankruptcy court may not enjoin proceedings between third parties unless those proceedings arise in or under or are related to the underlying bankruptcy."  Id. at 175.

In this case, the parties principally dispute whether the Bankruptcy Court had "related to"

---

[5]  Section 1334(a) provides that the district courts "have original and exclusive jurisdiction of all cases under title 11."  28 U.S.C. § 1334(a).  As used in § 1334(a), "cases under title 11" simply refers to the bankruptcy petition itself.   In re Combustion Eng'g, Inc., 391 F.3d 190, 225 n.38 (3d Cir. 2004); In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991).

[6]Proceedings involving "arising under" and "arising in" jurisdiction are referred to as "core" proceedings, whereas proceedings involving "related to" jurisdiction are referred to as "non-core" proceedings.  Stern v. Marshall, 131 S. Ct. 2594, 2605 (2011); accord Combustion Eng'g, 391 F.3d at 225.

jurisdiction over the state court proceedings.[7]  A proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984); accord Grace, 591 F.3d at 171 ("Proceedings over which a bankruptcy court can legitimately exercise related-to jurisdiction include 'suits between third parties that conceivably may have an effect on the bankruptcy estate.'" (quoting Combustion Eng'g, 391 F.3d at 226)).  More specifically, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  Pacor, 743 F.2d at 994.

Singer argues that the Bankruptcy Court lacked "related to" jurisdiction because, contrary to Union Trust's contention, Union Trust is not obligated to indemnify Grasso and Miller for costs and expenses incurred in connection with the state court proceedings.  Moreover, according to Singer, even if Union Trust is so obligated, that obligation does not sufficiently affect the administration of the bankrupt estate to warrant "related to" jurisdiction.

In response, Union Trust argues that the Bankruptcy Court did have "related to" jurisdiction because the state court proceedings triggered certain contractual indemnification provisions requiring Union Trust to indemnify Grasso and Miller.  In addition, Union Trust argues that the Bankruptcy Court had "related to" jurisdiction because the outcome of the state court proceedings would impact Union Trust's reorganization efforts and the value of its assets.

_____

[7]Union Trust also argues that the Bankruptcy Court had "arising under" jurisdiction over the state court proceedings because Union Trust made its request for injunctive relief under §§ 105(a) and 362(a) of the Bankruptcy Code.  As discussed above, this argument improperly focuses on the Bankruptcy Court's jurisdiction over the instant adversary proceeding, as opposed to the state court proceedings.  Singer does not dispute that the court had jurisdiction over the instant proceeding.

The Court will consider each of these contentions in turn.[8]

### 1.    Indemnification

A bankruptcy court lacks "related to" jurisdiction over a third-party action "if the only way in which that third-party action could have an impact on the debtor's estate is through the intervention of yet another lawsuit." Grace, 59 F.3d at 173; accord In re Federal-Mogul Global, Inc., 300 F.3d 368, 382 (3d Cir. 2002).  Thus, a mere claim of common law indemnity against the Debtor is not, in and of itself, enough to establish "related to" jurisdiction.  Id.; Combustion Eng'g, 391 F.3d at 190; Federal-Mogul, 300 F.3d at 382; Pacor, 743 F.2d at 994.  Some courts, however, have suggested that a contractual right to indemnity, as opposed to a claim of common law indemnity, is sufficient to establish "related to" jurisdiction.  See, e.g., A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1001 (4th Cir. 1986);  Philadelphia Newspapers, 407 B.R. at 612.  But, as the Third Circuit has recognized, while a contractual right to indemnity may present "a more direct threat" to reorganization, such a right is not, in all cases, sufficient to establish "related-to" jurisdiction.  Grace, 59 F.3d at 174 & n.9.  "What will or will not be sufficiently related to a bankruptcy to warrant the exercise of subject matter jurisdiction is a matter that must be developed on a fact-specific, case-by-case basis."  Id. at 174 n.9.

Union Trust contends that it has a contractual obligation to indemnify Grasso and Miller for legal costs and expenses incurred in the state court proceedings under the terms of the Operating Agreement for Union Trust Philadelphia LLC (the "Operating Agreement").  Singer,

---

[8]  The Bankruptcy Court addressed some of these contentions in its analysis of whether issuance of a § 105(a) injunction was proper.  To the extent appropriate, the Court addresses these contentions in its jurisdiction analysis and again in its analysis of whether the Bankruptcy Court abused its discretion in granting the injunction.  See Combustion Eng'g, 391 F.3d at 224 (noting that the "related to" inquiry and the § 105(a) inquiry may overlap).

on the other hand, contends that Union Trust has no such obligation because the claims raised in

state court did not arise from Grasso's and Miller's performance of any duties for Union Trust.

Moreover, Singer contends that even if Union Trust is contractually obligated to indemnify

Grasso and Miller, that obligation does not affect the administration of the bankruptcy estate

because any legal costs that resulted from the state court proceedings were incurred prior to the

bankruptcy filing.

> Section 3.3 of the Operating Agreement, entitled "Indemnity," provides in pertinent part:
>
> To the full extent permitted by the Pennsylvania Act, [Union Trust] will indemnify and hold harmless the Managing Members, Members, and any member, partner, shareholder, director or officer (collectively, the 'Indemnified Persons') from and against any and all loss, cost, damage, expense (including without limitation fees and expenses of attorneys and other advisors and any court costs incurred by any Indemnified Persons) or liability by reason of anything any Indemnified Persons do or refrain from doing for, or in connection with the business or affairs of, [Union Trust], except to the extent that it is finally judicially determined by a court of competent jurisdiction that the loss, cost, damage, expense or liability resulted primarily from the Indemnified Persons' misconduct which causes actual material damage to [Union Trust].

(June 1, 2011, Hr'g Tr., Exh. 2, at 3.)  The Operating Agreement further specifies that Grasso

and Miller are the sole "Members" and "Managing Members" of Union Trust, as those terms are

used in the Operating Agreement.  (Id. at 11.)

Based on the terms of the indemnification provision and the record before this Court, it is

arguable that Union Trust is contractually obligated to indemnify Grasso and Miller under the

Operating Agreement.  Indeed, Miller and Grasso both testified at the hearing below that the

indemnification provision requires Union Trust to indemnify them in connection with the state

court proceedings.  (June 1, 2011, Hr'g Tr. 31:23-32:5, 86:8-18.)[9]  In addition, Miller testified

---

[9]Grasso did note, however, that he has not made any demand on Union Trust to pay his legal bills since the bankruptcy filing.  (June 1, 2011, Hr'g Tr. 100:7-9.)

that Union Trust was paying both his and Grasso's legal fees in connection with those proceedings prior to the bankruptcy filing.  (Id. at 32:6-9, 52:2-9.)  At this juncture, however, the Court declines to construe the indemnification provision.

Given the limited record concerning indemnity before the Bankruptcy Court, the Court is unable to determine whether the claims raised against Grasso and Miller in the state court proceedings come within the scope of the provision.  See Philadelphia Newspapers, 407 B.R. at 614 (refusing to construe indemnification provision due to "the limited testimony and airing of the issues at the hearing below").   While Miller did testify that Union Trust was paying both his and Grasso's legal fees in connection with the state court proceedings prior to the bankruptcy filing (June 1, 2011, Hr'g Tr. 32:6-9, 52:2-9), it is unclear from the record whether Union Trust was making these payments pursuant to an obligation under the Operating Agreement, or as a matter of practice, or for some other reason.  Therefore, whether Union Trust is required to indemnify Grasso and Miller in connection with the state court proceedings is an open question. In these circumstances, Grasso's and Miller's potential contractual right to indemnification from Union Trust is insufficient, on its own, to establish "related to" jurisdiction over the state court proceedings.

Accordingly, the Court will consider Union Trust's alternative argument for "related to" jurisdiction – that the outcome of the state court proceedings would impact Union Trust's reorganization efforts.

### 2.    Impact on Reorganization Efforts

Union Trust contends that the outcome of the state court proceedings would impact its reorganization efforts for several reasons.  First, Union Trust argues that Grasso and Miller have guaranteed and provided financial assurances in support of a loan commitment that will be used

to help fund the Union Trust's reorganization.  Moreover, according to Union Trust, the

continuation of the state court proceedings would consume significant time and resources of

Grasso and Miller, thus impacting Union Trust's ability to engage in effective reorganization

efforts.  And finally, Union Trust contends that if the state proceedings are allowed to continue, it

could be barred from relitigating issues decided in those proceedings by operation of collateral

estoppel.

After careful review, the Court finds that Union Trust's contentions are amply supported

by the record.  For starters, the record reveals that both Grasso and Miller are crucial to Union

Trust's reorganization efforts.  To be sure, both are actively involved in obtaining financing for

the reorganization and have guaranteed a loan commitment in the amount of $6,063,000 to help

fund the reorganization. (June 1, 2011 Hr'g Exh. 4; June 1, 2011 Hr'g Tr. 33:2-17; 36:9-11.)  In

addition, Grasso and Miller testified that they are prepared to contribute their personal assets to

help fund the plan of reorganization and ensure that the loan is obtained.  (June 1, 2011 Hr'g Tr.

37:8-13; 85:11-86:7; 95:24-96:2).  Significantly, Grasso further testified that he has made

substantial payments – totaling approximately $125,000 to $150,000 – on behalf of Union Trust

since the bankruptcy filing to pay back taxes, litigation expenses, and an electricity deposit for

the restaurant.  (Id. at 84:5-16.)   According to Grasso, allowing the state court proceedings to

continue makes him "personally weaker to be able to help Union Trust."  (Id. at 100:20-21.)

Moreover, the record reveals that both Grasso and Miller participate extensively in the

operations of Union Trust.  Indeed, both Grasso and Miller testified that they are actively

involved in the daily operations of Union Trust and participate in daily business decisions

concerning Union Trust.  (Id. at 23:20-22, 67:1-10; 84:24-85:2; 110:6-8.)[10]   Specifically, Grasso

testified that he spends about five to six hours per day or more working on Union Trust matters

(id. at 106:14-17), which is more time than he devotes to any other entity in which he has an

interest (id. at 101:3-5).   According to Grasso, he spends most of those hours working at his

office and about ten hours per week working at the restaurant.  (Id. at 105:11-21; 106:3-12.)

Similarly, Miller testified that he devotes a substantial amount of time each week to Union Trust,

some of which he spends working at the restaurant.  (Id. at 46:25-47:9; 47:17-50:11.)  According

to Miller, his responsibilities include evaluating cash flow, maintaining cash balances, ensuring

that payroll is met, and arranging financing to meet Union Trust's credit obligations, among other

things.  (Id. at 43:23-44:5.)

    The record further demonstrates that the continuation of the state court proceedings

would require the involvement of both Grasso and Miller and would, thus, adversely impact

Union Trust's reorganization efforts.  Grasso testified that he has had to "[m]eet with attorneys,

review documents, spend money, [and deal with] mental aggravation" as a result of the state

court proceedings.  (Id. at 104:6-11.)  In addition, Grasso testified that he has had to devote time

to defend against Singer's collection efforts, including an attempt by Singer to have a sheriff

enter his home in order to effectuate a writ of execution and levy on personal assets in his

residence.  (Id. at 104:19-23.)  Likewise, Miller testified that he has participated in discussions

relating to attempts to resolve issues arising from the state court proceedings, such as the terms of

settlement.  (Id. at 32:10-33:1.)   He also testified that he has been "monitoring all the cases,"

including reading all of the motions and pleadings that have been filed.  (Id. at 76:18-23.)

---

[10]Grasso testified that he has interests in various entities, aside from Union Trust.  (June
1, 2011 Hr'g Tr. 100:22-101:2.)

Further, Miller testified that he has been involved in the preparation of financial information submitted to the Bankruptcy Court.  (Id. at 69:16-19.)

According to both Grasso and Miller, the state court proceedings significantly interfere with their role in Union Trust's reorganization efforts.  (Id. at 36:15-22; 89:5-11.)  Therefore, "[u]nder these circumstances, diverting the time and energy of key personnel from the reorganization effort at a critical time in the formulation of a plan would adversely impact the [] ability to promptly and effectively reorganize." Philadelphia Newspapers, 407 B.R. at 614.

If the state court proceedings are allowed to proceed, Union Trust's reorganization efforts could also be impacted in another substantive way.  Notably, Union Trust is in privity with Grasso and Miller.  Therefore, in subsequent suits, Union Trust could be bound to critical factual and legal issues determined in those proceedings by operation of collateral estoppel.[11]  See id. at 615; In re Am. Film Techs., Inc., 175 B.R. 847, 855 (Bankr. D. Del. 1994) (extending stay to third parties when debtor could be exposed to collateral estoppel).

Union Trust's potential indemnification obligations and the impact on Union Trust's reorganization efforts, taken together, provide an adequate basis for the Court to find that the state court proceedings are sufficiently "related to" the underlying bankruptcy.  Therefore, the Bankruptcy Court had jurisdiction to issue the injunction in the instant action.

---

[11]Collateral estoppel applies where:  (1) the issue decided in the prior case is identical to the one presented in the later case; (2) there was a final judgment on the merits in the prior action; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.  Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir. 2009).  "[P]rivity requires a prior legal or representative relationship between a party to the prior action and the nonparty against whom estoppel is asserted." Id. at 312.

B.      **Extension of Automatic Stay Under § 362(a)**

Next, the Court must determine whether the Bankruptcy Court properly extended the

automatic stay under § 362(a) to Grasso and Miller.  Section 362(a) "operates as a stay,

applicable to all entities, of the commencement or continuation . . . of a judicial, administrative,

or other action or proceeding against the debtor that was or could have been commenced before

the commencement of the case under this title, or to recover a claim against the debtor that arose

before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).  By its terms, §

362(a) stays actions only against the "debtor."  McCartney v. Integra Nat'l Bank North, 106 F.3d

506, 509 (3d Cir. 1997).  It typically does not extend to protect "sureties, guarantors, co-obligors,

or others with a similar legal or factual nexus to the . . . debtor."  Id. at 509-10 (quoting Maritime

Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1205 (3d Cir. 1991)).

However, where "unusual circumstances" exist, the § 362(a) automatic stay may be

extended to non-debtor third parties.  Id. at 510 (quoting A.H. Robins, 788 F.2d at 999).   The

Third Circuit has recognized that unusual circumstances may exist in at least two situations: (1)

where "there is such identity between the debtor and the third-party defendant that the debtor

may be said to be the real party defendant and that a judgment against the third-party defendant

will in effect be a judgment or finding against the debtor," id. (quoting A.H. Robins, 788 F.2d at

999)), and (2) where "stay protection is essential to the debtor's efforts of reorganization."  Id.;

see also Belcufine v. Aloe, 112 F.3d 633, 637 n.5 (3d Cir. 1997) (noting that the unusual

circumstances test first articulated in A.H. Robins "has since been adopted by this Circuit").

Whether unusual circumstances exist is a question of fact reviewed for clear error.  In re

Philadelphia Newspapers, LLC, 423 B.R. 98, 104 (E.D. Pa. 2010).

In this case, at a minimum, the second situation is present.  Indeed, the Bankruptcy Court

made numerous factual findings in support of its conclusion that extending the automatic stay to Grasso and Miller was essential to Union Trust's reorganization efforts.  In re Union Trust, 2011 WL 2604784, at *6-*7.  The court determined that Grasso and Miller devote a "substantial amount of their time" to the day-to-day operations of Union Trust.  Id. at *6.  In addition, the court found that Grasso and Miller are actively involved in Union Trust's reorganization. Specifically, Grasso and Miller have personally guaranteed a loan commitment on behalf of Union Trust and provided additional financial assurances in support of that commitment to help fund Union Trust's plan of reorganization.  Id. at *6-*7.  Moreover, Grasso has personally funded tax payments to the Internal Revenue Service on behalf of Union Trust.  Id.   According to the court, Union Trust's "ability to reorganize is clearly diminished and the [] estate risks substantial harm if it is deprived of Mr. Grasso and Mr. Miller's assistance in reorganizing."  Id.

As discussed above, the testimony provided by Grasso and Miller at the hearing clearly supports the Bankruptcy Court's findings.  Based on this record, the Court cannot say that the Bankruptcy Court's determination that unusual circumstances exist was clearly erroneous.[12] Therefore, the court's extension of the automatic stay to Grasso and Miller was proper.

---

[12]In addition, the record supports the existence of an identity of interests among Union Trust, Grasso, and Miller.  As discussed above, Union Trust's interest in the state proceedings is identical to the interests of Grasso and Miller because Union Trust is potentially obligated to indemnify them in connection with those proceedings.  See Philadelphia Newspapers, 407 B.R. at 616 (holding that unusual circumstances warranted extension of stay to third parties because of "potential contractual and common law duties to indemnify the Non-Debtors").  Moreover, Grasso and Miller have guaranteed a loan commitment in favor of Union Trust, and Grasso has made numerous payments from his own personal funds on behalf of Union Trust.  See In re Saxby's Coffee Worldwide, LLC, 440 B.R. 369, 379 (Bankr. E.D. Pa. 2009) (noting the courts have recognized that unusual circumstances exist when "the non-debtor owns assets which will either be a source of funds for the debtor or when the preservation of the non-debtor's credit standing will play a significant role in the debtor's attempt to reorganize").

C.       **Issuance of Injunction Under § 105(a)**

Last, the Court must determine whether the Bankruptcy Court properly exercised its

discretion in granting a preliminary injunction pursuant to § 105(a) to enjoin the state court

proceedings.  Section § 105(a) gives courts the authority to issue injunctions to effectuate the

purposes of the automatic stay under § 362(a).  Philadelphia Newspapers, 407 B.R. at 616;

Monroe Well, 67 B.R. at 751.  However, initially, the Court addresses Singer's argument that the

Anti-Injunction Act places a limitation on this authority.

1.       **Anti-Injunction Act**

The Anti-Injunction Act provides:  "A court of the United States may not grant an

injunction to stay proceedings in a State court except as expressly authorized by Act of Congress,

or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C.

§ 2283.  As the Third Circuit has recognized, "[a]lthough the Anti-Injunction Act . . . generally

prevents a federal court from enjoining state court proceedings, section 105(a) of the Bankruptcy

Code creates an exception to this general statutory rule by authorizing a bankruptcy court to issue

any order necessary or appropriate to carry out the provisions of the Act."  In re James, 940 F.2d

46, 51 (3d Cir. 1991); see also Matter of Davis, 691 F.2d 176, 177-78 (3d Cir. 1982) ("The

Bankruptcy Code . . . is an 'expressly authorized' exception to the statute."  (citing 11 U.S.C. §

105(a)).  Therefore, "a bankruptcy court generally is considered to possess the power to enjoin a

pending state action that violates the automatic stay."  James, 940 F.2d at 51.[13]

This authorization is not without limits, however.  While a bankruptcy court has the

_____

[13]As discussed above, the Third Circuit has determined that the scope of the automatic
stay may be extended to protect non-debtor third parties in "unusual circumstances."  McCartney,
106 F.3d at 510; see also Belcufine, 112 F.3d at 637 n.5.

18

power to stay proceedings in state court, it does not possess any power to vacate a judgment of the state court.  Id. (citing Hill v. Harding, 107 U.S. 631, 633 (1883)).  Therefore, so long as a bankruptcy court does not seek to vacate a state court judgment, the Anti-Injunction Act does not bar the court from using its § 105(a) power to suspend state court proceedings.  Id.

Here, the Bankruptcy Court did not so much as attempt to review the merits of the underlying state court judgment.  In re Union Trust, 2011 WL 2604784, at *3.  To the contrary, the court simply issued a preliminary injunction to suspend the state court proceedings against Grasso and Miller.  Id.  Upon expiration of the injunction, Singer is free to resume its efforts to enforce the judgment rendered by the state court.[14]  Therefore, the Anti-Injunction Act does not bar the injunctive relief granted by the Bankruptcy Court.  Accordingly, the Court proceeds to evaluate whether the Bankruptcy Court's issuance of the injunction was proper under the established standard for a preliminary injunction.

2.   **Preliminary Injunction Standard**

"It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (emphasis in original)

---

[14]As mentioned above, the preliminary injunction issued by the Bankruptcy Court expired on August 31, 2011.  However, there is an exception to the mootness doctrine for cases that are "capable of repetition" while "evading review."  Diop v. ICE/Homeland Sec., 656 F.3d 221, 227 (3d Cir. 2011) (quoting Turner v. Rogers, 131 S. Ct. 2507, 2515 (2011) (quoting S. Pac. Terminal Co. v. Interstate Commerce Comm'n, 219 U.S. 498, 515 (1911))).  This exception applies when "(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subjected to the same action again."  Id. (quoting Turner, 131 S. Ct. at 2515 (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam))) (alterations in original).  This exception applies here because the preliminary injunction was limited in duration and Union Trust could seek to renew it at any time.  Union Trust has not contested Singer's position that the appeal is not moot.

(citations and internal quotations omitted).  In order to obtain a preliminary injunction, the movant must satisfy the following factors:  "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." Mcternan v. City of York, 577 F.3d 521, 527 (3d Cir. 2009) (quoting United States v. Bell, 414 F.3d 474, 478 n.4 (3d Cir. 2005)).  Only if the first two factors of this standard are satisfied must a court proceed to consider the third and fourth factors.  Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 157 (3d Cir. 2002).  In the bankruptcy context, reasonable likelihood of success is equivalent to the debtor's ability to successfully reorganize.  Monroe Well, 67 B.R. at 752-53.

Applying these factors to the case at hand, the Bankruptcy Court determined that a preliminary injunction was warranted to extend the protections of the automatic stay to Grasso and Miller.  As to the likelihood of successful reorganization, the Bankruptcy Court observed that Union Trust has "negotiated cash collateral agreements with . . . its acknowledged secured lender," "is paying adequate protection payments to . . . its disputed secured lender," and "continues to operate its restaurant."  In re Union Trust, 2011 WL 2604784, at *6.  Therefore, the court concluded that "at this early stage in the proceedings [Union Trust's] prospects for a successful reorganization remain viable and is entitled to additional time to formulate its plan of reorganization."  Id.

The Bankruptcy Court also concluded that Union Trust would suffer irreparable harm if the state court proceedings are allowed to proceed.  The court explained that "[b]oth Mr. Grasso and Mr. Miller testified that a substantial amount of their time is devoted to the day-to-day

20

operation of [Union Trust]" and "that they are actively involved in [Union Trust's] attempts to secure post-petition financing" and are "arranging for funding on behalf of [Union Trust] to fund its plan of reorganization." Id. Additionally, the court recognized that "[t]here is evidence that Mr. Grasso has already provided post-petition funding to [Union Trust]." Id. Thus, according to the court, "[w]ithout their unfettered assistance, [Union Trust's] ability to reorganize is clearly diminished and [its] estate risks substantial harm if it is deprived of Mr. Grasso and Mr. Miller's assistance in reorganizing." Id.[15]

Moreover, balancing the hardships among the parties, the Bankruptcy Court recognized that Singer has "failed to identify any harm that [it] would suffer" if the state court proceedings are stayed. Id. at *7. Therefore, according to the court, while Singer has "expended considerable time, effort and resources to secure judgments against [Grasso and Miller], . . . the fact that efforts to collect on the judgments may be delayed for short period in and of itself is not sufficient to outweigh the potential harm to [Union Trust's] estate if [it] is deprived of the full assistance of [Grasso and Miller]." Id. Significantly, "to minimize any harm" to Singer, the court required Grasso and Miller to provide sworn personal financial statements so that Singer could monitor their assets to protect against dissipation. Id. In addition, the court made clear that the injunction would be of "limited duration" and that it would revisit whether continuation of the injunction is warranted if it found that Union Trust had not acted expeditiously in formulating its plan of reorganization. Id.

Finally, the Bankruptcy Court determined that the issuance of an injunction would further

---

[15]Grasso's and Miller's efforts to raise funds to finance Union Trust's reorganization – specifically, by guaranteeing and providing financial assurances in support of the loan commitment – also support the Bankruptcy Court's determination that there is a likelihood of successful reorganization.

the public interest by "foster[ing] . . . reorganization and protect[ing] the integrity of the claims resolution process."  Id.   These interests are well-established in the bankruptcy context, as they are the very interests underlying the §362(a) automatic stay.  See McCartney, 106 F.3d at 512 (explaining that the centralization of all prebankruptcy civil claims in the bankruptcy court provides the debtor "a 'breathing spell' during which he is relieved of the financial pressures that drove him to bankruptcy" and "permits the assets of the debtor's estate to be marshaled for distribution to creditors in an orderly and equitable fashion" (quoting Maritime, 959 F.2d at 1204)).  In this case, these interests have special significance because Union Trust continues to operate its steakhouse, the success of which could be hampered if the state court proceedings are not enjoined.

On this record, the Court cannot conclude that the Bankruptcy Court's factual findings were clearly erroneous.  Therefore, the court did not abuse its discretion in issuing an injunction pursuant to § 105(a) to extend the automatic stay to Grasso and Miller.

## VI.   <u>Conclusion</u>

For the reasons set forth above, the decision of the Bankruptcy Court issuing an injunction enjoining the state court proceedings is AFFIRMED.

An appropriate order follows.

O:\Josh\11-4580 In re Union Trust\Memo re Appeal.wpd